[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife commenced this action for a dissolution of marriage on the ground of its irretrievable breakdown, by complaint returnable February 15, 1993. She also seeks a property settlement and other relief, as on file. The defendant husband appeared by counsel, filed an answer admitting the allegations of the complaint and a cross complaint in which he seeks a dissolution of the marriage and a fair and equitable property settlement. Both parties were represented by counsel at the trial and submitted financial affidavits, written proposed orders and claims for relief. Neither party claimed alimony at trial, and the plaintiff sought the restoration of her prior married name. Each party testified and a number of documentary materials, including cancelled checks and income tax returns, were introduced into evidence. The plaintiff's daughter also testified. The taking of evidence was completed on May 10, 1994, CT Page 5268 and the court granted the parties until May 16, 1994 to file simultaneous post-trial briefs. The court and the parties therefore deemed the trial to be completed as of May 16, 1994.
From the evidence, the court finds as follows: the plaintiff married the defendant husband at Gales Ferry, Connecticut, April 1, 1981. Her birth name was Elaine Pfeiffer and her prior married name was Elaine Gardner. The wife has been a resident of this state for at least one year before the date of trial in this case. All statutory stays have expired, and the court has jurisdiction.
The parties have no minor children issue of their marriage, and none were born to the wife since the date of the parties' marriage. This is the husband's first marriage and the wife's second. The wife has two daughters from her first marriage who have reached their majority. One of the daughters resides with her in the family home at 22 Van Tassel Drive, Gales Ferry.
Neither party is a recipient of public assistance.
The husband is 48 years of age, and completed three years of high school. He has a number of vocational skills in the sheet metal, heating, refrigeration and air conditioning trades. He is in good health and has been employed as a sheet metal worker for a local firm for the past thirteen months. He earns $471 per week gross, and $354 per week net.[1] Previously, he had been self employed during the marriage.
The wife is 47 years of age and in good health. She is a high school graduate and worked in a retail store until the marriage. Thereafter, she worked in the husband's business, Gales Ferry Sheet Metal Works, for a few years as a bookkeeper. In 1984 she purchased a liquor store from her father for $90,000. She paid the entire purchase price out of income from the business in installment payments. She is now its sole owner and earned an adjusted gross income (before deduction of federal and state income taxes) of about $21,000 during 1993. She reports on her financial affidavit $404 per week gross income and $392 per week net which includes $50 per week room and board from her daughter.
This marriage of more than thirteen years was troubled for most of its duration. The husband had a drinking problem, which resulted in acts of violence and his withdrawal from family events, as the household originally consisted of the parties and CT Page 5269 the wife's two adolescent daughters. The husband moved from the conjugal bed into separate sleeping quarters in the family home in 1989 or 1990; he left the home in May, 1993, and the parties have lived separately since.
From all of the evidence, the court concludes that the marriage has broken down irretrievably and that a greater share of the responsibility for that breakdown must be borne by the husband.
The principal assets the parties report on their financial affidavits and the values as found by the court are: the liquor store known as Ledyard Spirit Shop worth $40,000; an IRA account of $15,995 and a Keough plan worth $8,039; 249 shares of Pfizer stock worth $14,816; a 1993 Ford motor vehicle worth $17,000; cash on deposit in banks of $3,098; and the family home and adjoining lot at 22 Van Tassel Drive, Gales Ferry, worth $125,000 less a mortgage of $48,000, leaving an equity of $77,000. All of these assets are in the wife's name alone.
The liquor store business was acquired solely through the wife's relationship with her father and her work efforts, and her IRA accounts and Keough plan originated from her earnings. She also inherited the Pfizer stock from her father. The cash on deposit on the banks and her vehicle were also derived from her earnings and some family gifts.
The home was purchased in 1981 in joint names for $72,500. The husband put up the down payment of $22,500, which was derived from the sale proceeds of a house solely owned by him, and the parties obtained a mortgage for the balance. Because he was experiencing financial problems in his sheet metal business (which was gifted to him by his father including the real estate from which it was operated) and he anticipated claims from creditors, he transferred his interest in the home to the plaintiff by quit claim deed for no monetary consideration.
The parties purchased an adjoining lot for $2,500 which the defendant provided from his funds. He also provided and paid for the labor and materials to construct a garage/outbuilding on the premises, which cost approximately $11,000. The defendant did much of the construction work himself and also did some repairs and renovations to the family dwelling. The appreciation in value over the original purchase price of the house and adjoining lot was $50,000. There was no evidence to show what CT Page 5270 portion of this appreciation, if any, resulted from the defendant's renovations and the erection of the garage/outbuilding. The husband installed tools and equipment in the garage/outbuilding and carried on a sheet metal business there.
The husband reports modest assets on his financial affidavit. These include his 1986 Ford van valued at $2,500; a 1923 Ford replica truck valued at $2,500; his sheet metal tools and equipment valued at $5,000; and cash on deposit in the bank of $344. These items were all acquired by the husband from his earnings.
He appears to claim on his affidavit an equitable interest in the family home. It was agreed by the parties at the close of trial that the husband was entitled to the 1923 Ford replica and his tools and equipment and could remove them from the premises.
The husband sold his sheet metal business and real estate in the fall of 1986 for $81,000. He received almost $10,000 in cash at the closing (including the $1,000 deposit) and took back a purchase money mortgage of $70,000 from the buyer, which was paid in full according to its terms. The defendant claims that about $43,000 of the sale proceeds was used to pay his business creditors, and that he gave the wife $10,000 to help finance her business and $8,500 to her father in repayment of a loan.
Actually, some of the $10,000 was used by the wife to pay creditors who were threatening legal action, and $2,500 went to purchase the above-mentioned lot. The loan from the wife's father was to pay the couple's past due income taxes.
The husband did not fully document his use of the proceeds from the above referred to sale, stating he had thrown away his cancelled checks and bank checks evidencing the disbursement of the funds. He claimed that it was impractical and expensive to obtain replacement copies of the checks from the banks involved. At the same time, he introduced into evidence a large number of cancelled checks covering the period 1981 through 1992 and none for 1986, the year of the sale. The court finds his testimony on this point improbable.
Putting aside for the moment the defendant's cash CT Page 5271 contributions to the house and lot purchase which totaled $25,000 and to the garage construction of about $11,000, the parties' monetary contributions to the family and household expenses were approximately equal, through and including 1988, except for 1986, when the defendant contributed nothing. It is significant to note that the defendant filed no income tax returns for the years 1985 through 1987, inclusive.
From 1989 through 1992, he contributed a total of about $9,700 to the family, not including $5,500 in checks payable to the wife's liquor store, the use of which was not explained. The wife's adjusted gross income[2] over the same four years was approximately $105,800; when adjusted for self employment and federal income taxes, she enjoyed net aggregate income during that period of approximately $80,600. See Plaintiff's Exhibits E, F and G; the parties' joint federal income tax returns, 1989-1991; and Plaintiff's Exhibit H, wife's 1992 federal income tax return. All of her net income during 1986 and the years 1989-1992 inclusive were used for family purposes, including the payment of husband's medical insurance premiums and the home mortgage payments. Assuming that the husband's entire contribution of $15,200 was devoted to household expenses, and not considering the wife's purchase of her new 1993 vehicle (in 1992) as a family or household expense, her monetary contributions to the family were in excess of his by about $50,000 during the above referred to four year period. And even when his monetary contributions to the house, lot and garage/outbuilding are factored in, her monetary contributions to the acquisition, preservation and appreciation in value of the family home were more than equal to, if not significantly greater than his. In addition, the defendant contributed nothing to the household after he left in May, 1993, while the wife continued to pay the mortgage, real estate taxes and other home-related expenses.
The court also concludes that the wife's non-monetary contributions to the marriage were greater than those of the husband's.
The court finds that their employability is equal, but that the husband's vocational skills, present income and earning capacity are greater than that of the wife, and although she presently has more in the way of liquid assets than he does, their opportunities to acquire future capital assets and income are approximately equal. CT Page 5272
The court has considered all of the evidence and its findings in the light of the criteria in General Statutes § 46b-81 and 46b-82 and the income tax implications and consequences of its financial orders and orders:
(1) A decree dissolving the marriage shall enter on the ground of irretrievable breakdown.
(2) No alimony is awarded to either party.
(3) The wife shall take, have and own, free of any claim of the husband (excepting the mortgage interest set forth hereinafter) all right, title and interest in the home and lot known as No. 22 Van Tassel Drive, Gales Ferry, Connecticut.
(4) The wife shall also take, have and own, free of the husband's claims, all right, title and interest in and to the following: the Ledyard Spirit Shop, the contents of the family home and the personal property in her possession (excepting the personal property hereinafter set out to the husband); her 1993 Ford motor vehicle; her bank accounts shown on her financial affidavit; her 249 shares of Pfizer, Inc. stock; her Keough account, and the remainder of her IRA account not disposed of in paragraph 6 below.
(5) The defendant husband shall take, have and own, free of any claims of the wife, all right, title and interest in and to the following: the personal property in his possession; his 1986 Ford van; his tools and equipment; his 1923 Ford replica motor vehicle; and his bank account.
(6) The plaintiff shall transfer to the husband by Qualified Domestic Relations Order (QDRO) one-half of her IRA account valued as of May 10, 1994. The court shall retain jurisdiction over this transfer to ensure that the documents of transfer comply with applicable law.
(7) The plaintiff wife shall execute and deliver to the defendant a promissory note in the amount of $20,000 payable with simple interest at the rate of three (3%) percent per annum. Said note shall be secured by a second mortgage on the premises at 22 Van Tassel Drive, Gales Ferry, Connecticut (including the adjoining lot). The principal balance of said note and the interest accruing thereon shall be immediately due and payable on CT Page 5273 the first to occur of the following: the wife's death or remarriage; or, her living together with another person within the meaning of General Statutes § 46b-86(b), sale of the premises; or, June 1, 1999. Said note and mortgage shall provide for attorney's fees in the event of default and further provide that the plaintiff shall name the defendant as mortgagee loss payee on the homeowner's insurance policy and furnish him with proof thereof, so long as the mortgage balance remains unpaid.
(8) The defendant shall be solely responsible for any liability for federal income taxes, interest and penalties due for the calendar years 1985 through 1987 and 1992, and indemnify and save the wife harmless therefrom, as agreed and proposed by the parties.
(9) The wife shall pay the liabilities shown on Schedule 3 of her financial affidavit. No liabilities were reported on the defendant's financial affidavit.
(10) No attorney's fees are awarded to either party.
(11) The wife's prior married name, Gardner, shall be restored to her.
Teller, J.